```
       IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA
```

CARL W. SULLIVAN,                )
                                 )
            Plaintiff,           )
                                 )
v.                               )  Case No. CIV-06-457-KEW
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security Administration,         )
                                 )
            Defendant.           )

## OPINION AND ORDER

Plaintiff Carl W. Sullivan (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence"

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 24, 1954. He completed his education through the twelfth grade. Claimant has previously worked as a floater in a warehouse, forklift operator, and janitorial worker. Claimant alleges an inability to work beginning January 1, 1998, due to injuries to his neck, back and legs as well as stomach problems and depression.

### Procedural History

On February 23, 2004, Claimant filed for disability insurance benefits and Supplemental Security Income under Title II (42 U.S.C. § 401, *et seq.*) and Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied

initially and upon reconsideration. On September 9, 2005, Claimant appeared at a hearing before ALJ Michael Kirkpatrick in Hugo, Oklahoma. By decision dated January 23, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision.

On May 30, 2006, the Appeals Council accepted review of the ALJ's decision, after reviewing the record and certain new evidence submitted by Claimant. On July 6, 2006, the Appeals Council issued a partially favorable decision, finding Claimant disabled as of July 24, 2004, Claimant's 50th birthday. The Appeals Council adopted "the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." However, the Appeals Council did not "adopt the ALJ's findings or conclusions regarding whether the claimant is disabled for the period beginning with July 24, 2004." (Tr. 9). Thus, the decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a

4

residual functional capacity ("RFC") to allow him to perform a significant range of light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in failing to (1) request the opinion of a medical advisor regarding the date of onset; (2) perform a proper step 2 and 3 evaluation; (3) perform a proper credibility analysis; and (4) perform a proper step 5 evaluation.

**Obtaining the Opinion of a Medical Advisor**

Claimant first asserts the ALJ should have obtained the opinion of a medical advisor in order to ascertain the onset date for his disability, alleging the date is "obscure." The genesis of Claimant's injuries can be found in an automobile accident which occurred in 1992. As a result of that accident, Claimant suffered a fracture to his right lower leg and ankle, as well as internal injuries. Claimant subsequently experienced problems with his back and neck. (Tr. 111). Claimant also was found to suffer from posttraumatic degenerative arthritis in his right knee, right ankle and right hand. (Tr. 113). Claimant's date of last insured status was March 31, 2003.

In a consultative examination conducted June 7, 2004, Gordon B. Strom, Jr., M.D. concluded Claimant's "major problem is his significant depression." (Tr. 113). Dr. Strom performed a mental status exam and found Claimant had poor eye contact, poor self

5

esteem with depressed mood and affect. Claimant exhibited no suicidal ideation. Claimant was determined by Dr. Strom to have a "significant amount of depression over his divorce and the fact that his wife left him after the accident." (Tr. 113).

In his opinion, the ALJ, as adopted by the Appeals Council, found Claimant suffered from a severe impairment due to posttraumatic degenerative arthritis of the right knee, right ankle, and right hand. (Tr. 29). With regard to Dr. Strom's findings of depression, the ALJ concluded Dr. Strom was "at least in part, an assessment of an impairment outside of the doctor's area of expertise." (Tr. 26). The ALJ found Claimant had not sought treatment for depression and engaged in normal daily activities. The ALJ ascertained the record provided no objective support for a finding of severe depression. Id.

The Appeals Council adopted these findings but also considered a subsequent report authored by a consultative examiner, Patrick Turnock, PhD. (Tr. 153-155). This report was not available to the ALJ and submitted after the appeal was taken. Dr. Turnock states in his report that Claimant never sought mental health treatment for depression and, although Claimant reports depression since the automobile accident in which he was injured, he has never pursued antidepressant medication. (Tr. 154). Dr. Turnock diagnosed Claimant with Axis I: Dysthymic disorder, Axis II: No diagnosis, Axis III: Per medical evaluation, Axis IV: Lack of social support,

Lack of access to appropriate medical care, Lack of access to appropriate mental health services. (Tr. 155). He further concluded:

> The patient appears to have been experiencing depression for approximately the past ten years. This depression has not been severe enough to cause him to pursue formal services for it. However, a recommendation includes a referral to the local mental health center in order to pursue treatment with an antidepressant medication for his ongoing low-grade depression. Additionally, the patient was encouraged to pursue activities that would improve his level of social contact and strengthen his social support network.
>
> Id.

The "onset date" is defined as "the first day an individual is disabled as defined in the Act and the regulations." Soc. Sec. R. 83-20. Relevant factors for this determination are Claimant's allegation of an onset date, his work history, and the medical evidence, with medical evidence being the primary element in determining the onset date. Id. Claimant is correct that an ALJ is required to employ a medical advisor in the event the medical evidence of onset is ambiguous. Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995). However, in this case, Claimant's onset date is not in doubt, based upon the evidence present in the record. Dr. Strom found on June 7, 2004 that Claimant "would benefit from counseling and possibly a sedentary type of occupation. . . ." (Tr. 113). This finding was made well after Claimant's date of last insured status of March 31, 2003. Ultimately, the Appeals Council

applied Grid rule 201.14 and found Claimant disable with the final contributing factor to be his advanced age. Claimant has not directed this Court to any medical evidence in the record which would call this final onset date determination into question. Without this showing of ambiguity, the appointment of a medical advisor is not required.

### Step 2 and 3 Evaluation

Claimant next alleges the ALJ failed to perform an adequate analysis at step 2 and 3 of the sequential evaluation. Specifically, Claimant argues he suffers from severe depression, which should have been considered in the ALJ's evaluation. Instead, the ALJ rejected Claimant's depression, finding it insufficiently severe to constitute an impairment which precluded employment.

Even considering Dr. Strom's comments and opinion regarding Claimant's mental state, Claimant has failed to demonstrate he suffers from a severe mental impairment. Dr. Strom did not conclude Claimant's "significant amount of depression" resulted in an inability to engage in gainful employment. To the contrary, Dr. Strom found such employment at a sedentary level would be beneficial to Claimant and his depression. (Tr. 113). Claimant's challenge to the ALJ's conclusion that Dr. Strom was providing an opinion outside of his expertise is not persuasive. The ALJ specifically stated his rejection of Dr. Strom's mental evaluation was only in part due to it being outside of his expertise in internal medicine.

8

(Tr. 26). The ALJ went forward in his decision and identified specific evidence in the record which demonstrated Claimant's depression was not of such a degree so as to constitute a severe impairment. Claimant's accomplishment of daily activities and lack of treatment for depression were factors upon which the ALJ relied for his conclusion. Id. Further, the Appeals Council, which adopted the ALJ's findings prior to the date of achieving advanced age, also relied upon the opinions expressed in Dr. Turnock's report, which was submitted as a part of the record on review to that body. Dr. Turnock found Claimant only suffered from mild depression, which were never severe enough for him to seek treatment. (Tr. 155). Although Claimant now attributes this deficiency to poverty, the record from Dr. Turnock indicates the reason for Claimant's lack of seeking treatment was precipitated by his depression not being "severe enough to cause him to pursue formal services for it." Id. In short, Claimant has failed to provide any evidentiary support to his contention that his depression rises to the level of a severe impairment. The ALJ's findings in this regard, as adopted and amended by the Appeals Council, do not represent error at either step 2 or 3.

## Credibility Analysis

Claimant contends the ALJ failed to engage in a proper credibility analysis in rejecting his subjective claims of symptoms. It is well-established that "findings as to credibility should be

9

closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In his decision, the ALJ identified many of these factors in weighing Claimant's credibility on his alleged symptoms. (Tr. 26-27). He concluded the record did not support the totality of these symptoms in reaching his decision, including the fact Claimant had not sought medical treatment since his alleged onset date, his

continued employment after his alleged onset date, his accomplishment of significant daily activities, and the objective medical evidence. (Tr. 25, 26, 29). The Appeals Council also discussed Claimant's work for a friend and the sedentary nature of the work accomplished. (Tr. 10). "[A] formalistic factor-by-factor recitation of the evidence" is not required to support the necessary analysis. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's and Appeals Council's discussion and the references to the objective record contained in it, considered in toto, is sufficient to support the credibility findings of the ALJ.

### Step 5 Analysis

Claimant also asserts the presence of certain non-exertional impairments precludes the application of the Grids in this case. Specifically, Claimant contends his inability to balance represents a non-exertional impairment. The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to

the extent that such impairments limit the range of jobs available to the claimant. Id.

In this case, Claimant as alleged impaired balance would constitute a non-exertional impairment. However, the evidence does not support such a limitation. Dr. Strom found Claimant "could ambulate in the clinic" and "had some difficulty standing on his toes, but could ambulate safely without the use of assistive devices. He can stand from a seated position, can move about the clinic without obvious discomfort and has a safe, stable gait." (Tr. 112). When examined by Terry Kilgore, M.D., Claimant's "gait was slow" and he "had a walking cane that was not totally obligatory." (Tr. 151). Other subjective testimony was found by the ALJ and Appeals Council to not be credible. Consequently, the application of the Grids was not erroneous in this case.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED** for the reasons set forth in this Order.

DATED this 31st day of October, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE